# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                              No. 1:18-cr-00458 WJ

KENJA TRERON THOMAS,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL DISCOVERY

THIS MATTER is before the Court on Defendant's Motion to Compel Discovery, filed on September 13, 2018 **(Doc. 38)**. Having reviewed the Defendant's motion and the applicable law, the Court finds that the Motion is well-taken and is therefore **GRANTED IN PART** and **DENIED IN PART**. The Government is directed to examine the specified categories of documents below in Special Agent Jarrell Perry's personnel file for any *Brady* or *Giglio* material.

## BACKGROUND

Defendant is charged with possession with the intent to distribute 50 grams or more of methamphetamine, pursuant to 21 USC § 841(a)(1) and § (b)(1)(A). **Doc. 35.**

The Government sent a letter on September 7, 2018 to Defendant disclosing that a prior Tenth Circuit case *United States v. Geraldo de la Campa-Rangel*, 519 F.3d 1258 (10th Cir 2008) may bear on Agent Perry's credibility. The letter stated as follows:

> Pursuant to the United States' discovery obligations, I write to advise you of a published opinion involving the case agent in the aforementioned case, Special Agent Jarrell Perry. The Tenth Circuit opinion in *United States v. Geraldo de la Campa-Rangel*, 519 F.3d 1258, discusses the testimony of Special Agent Perry and may bear on his credibility as a witness. Special Agent Perry maintains that he did not lie

> during the course of the *de la Campa-Rangel* matter, **and the DEA Office of Professional Responsibility has investigated this matter and determined Special Agent Perry did not engage in misconduct.**
> Please note that the United States' disclosure of this information is no waiver or diminution of the United States' right to assert that this information should not be allowed as impeachment at any trial and/or any other proceeding in this case.
> Please do not hesitate to contact me if you would like to discuss this further.

**Doc. 38-1** (emphasis added). In the *Rangel* case, the Tenth Circuit remanded for the district court to consider, in a § 2255, allegations that Agent Perry gave perjured testimony. This was based on alleged discrepancies between his testimony at a preliminary hearing and a report he drafted the same day. There were no judicial findings of perjury, but the Government agreed to vacate the sentence and resentence Defendant to a sentence of time served (approximately 4 years), down from ten years.

Moreover, the DEA's Office of Professional responsibility apparently investigated the *Rangel* matter and determined that no misconduct occurred. **Doc. 38-1.**

In this Motion, Defendant initially requested disclosure of "any and all material including but not limited to the results of the mentioned DEA investigation, that were reviewed in preparing the September 7, 2018 letter." **Doc. 38.** Defendant also requested that the Government produce any statements made by Agent Perry in the OPR's investigation. Defendant seemingly narrowed that request in the reply brief, stating that he seeks disclosure only of the OPR report referred to in the September 7, 2018 letter, as well as any statements made by Agent Perry regarding his involvement in the *Rangel* matter.

In an amended response, the Government represents that they asked the DEA's *Giglio* officer to search for, and disclose, any agency finding of misconduct that reflects upon the truthfulness or possible bias of the employee, any pending allegation of misconduct, or any past or pending criminal charge.

2

# DISCUSSION

Defendant seeks the production of certain categories of documents from Agent Perry's personnel file, including: "the statements [Agent] Perry made to the OPR and the report the OPR generated as a result of its investigation into whether [Agent] Perry lied under oath." **Doc. 63, p. 4.**

### I. *Brady* Law.

"Due process mandates disclosure by the prosecution of all evidence that favors the defendant and is 'material either to guilt or punishment.'" *United States v. Robinson,* 39 F.3d 1115, 1118 (10th Cir.1994)) (quoting *United States v. Bagley,* 473 U.S. 667, 674 (1985)); *United States v. Velarde*, 485 F.3d 553, 558–59 (10th Cir. 2007). Evidence is favorable if it is exculpatory or impeaching. *Douglas v. Workman*, 560 F.3d 1156, 1172–73 (10th Cir. 2009), *citing Bagley,* 473 U.S. at 676. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Cooper*, 654 F.3d 1104, 1119 (10th Cir. 2011); *see also United States v. Torres*, 569 F.3d 1277, 1281 (10th Cir. 2009) ("A defendant who seeks a new trial based on an alleged *Brady* violation must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material.").

The Court's "materiality review does not include speculation. The mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard. *Banks v. Reynolds*, 54 F.3d 1508, 1519 (10th Cir. 1995) (internal quotation marks and citation omitted)

## II. **Impeachment Evidence.**

"Impeachment evidence is exculpatory for *Brady* purposes." *Cooper*, 654 F.3d at 1119; *United States v. Torres*, 569 F.3d 1277, 1282 (10th Cir. 2009). "Because of the value of cross-examination, when the credibility of a prosecution witness is important, impeaching evidence is subject to *Brady* disclosure." *Nuckols v. Gibson*, 233 F.3d 1261, 1267 (10th Cir. 2000); *see Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule.") (quotation marks omitted).

Moreover, "[s]uppressed evidence that significantly enhanc[es] the quality of the impeachment evidence usually will satisfy the materiality standard." *Cooper*, 654 F.3d at 1120, *quoting Douglas,* 560 F.3d at 1174. Thus, for impeachment evidence to be material, the credibility of a central witness must be at issue. *United States v. Espinoza*, 545 F. App'x 783, 786 (10th Cir. 2013); *See also Robinson,* 583 F.3d at 1271 ("[H]is testimony was central—indeed essential—to the government's case.... It is not a stretch to say that the guilty verdict in this case depended upon the [confidential informant's] testimony."); *Douglas,* 560 F.3d at 1175 ("[The witness] was an indispensable witness for the State's case against [the defendant].... Because impeachment of the witness who held the key to the successful prosecution of [the defendant] was denied to the defense, the district court correctly concluded that the State's *Brady* violations were material."); *Nuckols,* 233 F.3d at 1266 ("[The witness's] trial testimony was key to a successful prosecution.... If [the witness's] testimony that Mr. Nuckols initiated the interrogation were impeached, the entire support for the State's case would have been significantly undermined, if not destroyed altogether.").

Here, Defendant seeks to introduce evidence from another, unrelated case. Generally, even matters outside the present case may potentially be exculpatory and discoverable if it affects the credibility of a testifying case agent. *United States v. Huerta-Rodriguez*, No. CR 09-3206 JB, 2010 WL 3834061, at *9 (D.N.M. Aug. 12, 2010) (Anything that affects an agent's credibility may be exculpatory, especially where the only Government witnesses are the officers themselves), *citing Denver Policeman's Protective Ass'n v. Lichtenstein,* 660 F.2d 432, 436 (10th Cir.1981)("Where the only prosecution witnesses are the police officers involved, anything that goes to their credibility may be exculpatory.").

### III. Case Agent Personnel Files.

Defendant requests that the Government produce two categories of information: (1) the OPR report referred to in the September 7 letter, and (2) Agent Perry's statements in the DEA's investigation into the *Rangel* matter. *See* **Doc. 63, p. 10.**

#### A. General Law on Production of Agent Personnel Files.

Generally, there is no *Brady* right for a defendant to comb through even a testifying case agent's personnel files, or to demand production of categories of documents therein. *United States v. Muse*, 708 F.2d 513, 517 (10th Cir. 1983); *United States v. Garrison*, 147 F. Supp. 3d 1173, 1185 (D. Colo. 2015) ("[Defendant] has no constitutional right to law enforcement witnesses' personnel files simply to see whether they contain potentially impeaching information. If the Government *knows* of such information, then *Giglio* of course requires its disclosure. But neither *Giglio* nor any other authority gives a defendant a right of access to all categories of information where impeaching material might exist.").

Rather, the Government determines whether documents fall under *Brady* or *Giglio*, absent a showing that the Government has otherwise been hiding such discovery. *See generally*

*Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987), *cited in United States v. Grobstein*, No. CR 13-663 MV, 2013 WL 12328891, at *3 (D.N.M. Sept. 3, 2013).

**B.     Procedure for Searching Agent Personnel Files.**

In some circumstances, *Brady* requires the government to examine the personnel files of case agents for any *Brady* or *Giglio* material. *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *See United States v. Hykes*, No. CR 15-4299 JB, 2016 WL 1730125, at *20 (D.N.M. Apr. 11, 2016) (the Government "must search the personnel files of the testifying officers pursuant to the Court's order at the hearing, examining the list of documents that Hykes specifically requests in his Giglio Motion."), *quoted in United States v. DeLeon*, No. CR 15-4268 JB, 2017 WL 2271427, at *38 (D.N.M. Mar. 8, 2017); *see also United States v. Grobstein*, No. CR 13-663 MV, 2013 WL 12328891, at *4 (D.N.M. Sept. 3, 2013) (although no finding of materiality, district court ordered "the government to review, … all of Agent Perry's personnel files… including but not limited to any OPR investigation files, that may contain material exculpatory information casting doubt on the credibility of Agent Perry, either as a general matter or with special reference to this case."); *see also United States v. Goble*, 1995 WL 646822, at *2 (D. Kan. Oct. 11, 1995) ("A duty to search files maintained by governmental agencies closely aligned with the prosecution may be triggered when there is some reasonable prospect or notice of finding exculpatory evidence."), *citing United States v. Brooks,* 966 F.2d 1500, 1503 (D.C. Cir. 1992).

The Government may satisfy its *Brady* duty by following current DOJ policy, in which DEA attorneys or staff examine the case agent's personnel file and produce any *Brady* or *Giglio* material to the Assistant United States Attorney. *See United States v.* Jennings, 960 F.2d 1488, 1492 (9th Cir. 1992) ("adherence to this procedure would indicate that the AUSA is fulfilling his

6

[or her] responsibility for ensuring Government compliance with *Brady.*"). The Assistant United States Attorney will then determine whether such documents are *Brady* or *Giglio* discovery subject to disclosure to the Defendant. *United States v. Jennings*, 960 F.2d 1488, 1491-92 (9th Cir. 1993); *see also United States v. Herring*, 83 F.3d 1120 (9th Cir. 1996) (Under *Henthorn*, an AUSA may not be ordered by a district court to conduct the examination personally; rather, the appropriate agency may examine its files and notify the AUSA of any potential *Brady* material).

### C. **Government Agreed to Search for *Giglio* Material**.

Initially, the Court concludes that Defendant has not made a sufficient showing to order wholesale production of these categories of documents. The fact that there was an investigation by the OPR does not indicate that Agent Perry lied or committed any misconduct. In fact, the OPR concluded there was no misconduct. Although the personnel files *may* contain impeachment evidence, Defendant has not made a showing that there is a reasonable probability they do include impeachment evidence. Rather, Defendant seeks a category of documents which may or may not contain exculpatory evidence. Until Defendant can identify specific exculpatory material, it is up to the Government to search the requested categories of documents and produce any *Giglio* evidence. *See United States v. Grobstein*, No. CR 13-663 MV, 2013 WL 12328891, at *3 (D.N.M. Sept. 3, 2013) (denying almost identical request for production of Agent Perry's based on allegations of misconduct in *Rangel* case, but directing Government to search personnel file); *see also United States v. McCluskey*, No. 10-CR-2734 JCH, 2012 WL 13081295, at *9 (D.N.M. May 11, 2012) (declining to order government to examine personnel files absent a "particular showing of materiality").

However, the Government has agreed to search Agent Perry's personnel files for any *Brady* or Giglio material. The Government represents that they have filed an official request

with the DEA *Giglio* officer to search Agent Perry's personnel file, and would produce any *Giglio* or impeachment evidence found. *See United States v. Jennings*, 960 F.2d 1488 (9th Cir. 1992) (review of personnel file by agency attorney or staff for any *Giglio* information "would indicate that the AUSA is fulfilling his [or her] responsibility for ensuring Government compliance with *Brady*."); *see also United States v. Brooks*, 966 F.2d 1500, 1504-05 (D.C. Cir. 1992) (review of police files by police department or by AUSA was sufficient, no in camera hearing necessary). The Court finds that this search is generally sufficient, and there is no need to compel the production of categories documents from Agent Perry's personnel file. *See United States v. Muse*, 708 F.2d 513, 516-17 (10th Cir. 1983), *cited in United States v. Lindsey*, No., 2004 WL 1846123, at *2 (D. Kan. May 6, 2004).

## CONCLUSION

Therefore, the Government (or the appropriate person at the DEA) is directed to search the specific categories of documents identified by Defendant – the OPR's investigative report, and any statements made by Agent Perry in the investigation– and decide whether those materials contain any *Brady, Giglio*, or impeachment evidence. The Government is directed to produce to the Defendant any *Brady* or *Giglio* material found in Agent Perry's personnel file.

**IT IS THEREFORE ORDERED** that Defendant's Motion is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that the Government (or the DEA's *Giglio* official) shall search Agent Perry's personnel file for any *Brady* or *Giglio* impeachment evidence as specified above.

**IT IS FURTHER ORDERED** that the Government is directed to produce any *Brady* or *Giglio* evidence found in Agent Perry's personnel file.

**IT IS FURTHER ORDERED** that any further requests for relief are **DENIED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE