ThakIN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                           No. 1:18-cr-00458 WJ

KENJA TRERON THOMAS,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING IN PART DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EXPERT OR OPINION TESTIMONY

THIS MATTER is before the Court on Defendant's Motion in *Limine* to Exclude Improper Opinion Testimony as well as Undisclosed Expert Testimony, filed September 13, 2018 **(Doc. 39)**, Defendant's Motion in *Limine* to Exclude Proffered Expert/Opinion Testimony, filed on November 7, 2018 **(Doc. 65)**, and Defendant's Addendum thereto, filed November 9, 2018 **(Doc. 69)**. Having reviewed the pleadings and the applicable law, the Court finds that the Motion is not well-taken and is, therefore, **DENIED IN PART**. The Court will hold a hearing to hear evidence related to the proposed experts' qualifications and the reliability of the proposed expert testimony.

### BACKGROUND

Defendant is accused of violating 21 USC §§ 841(a)(1) and (b)(1)(A), Possession with Intent to Distribute 50 Grams and More of Methamphetamine. Defendant was traveling on a Greyhound bus through Albuquerque. While waiting for the bus to depart from Albuquerque, Defendant allowed DEA Special Agent Jarrell Perry to conduct a search of his belongings. SA Perry found an alleged controlled substance, methamphetamine, in the neck pillow.

Defendant seeks to exclude expert opinion testimony of SA Perry and Officer Oscar Villegas.

The Government filed a Notice of Intent to Offer Opinion Testimony of SA Perry. **Doc. 48.** The Notice provided:

> SA Perry's testimony will include specialized knowledge and experience regarding narcotics investigations including interdiction operations derived from his education, training, and professional experience. SA Perry will testify that the amount of methamphetamine seized in this investigation is consistent with distribution, and will offer an opinion as to the street value as to the seized narcotics. SA Perry's testimony may include his knowledge of methamphetamine, its manufacturing origins, its properties and nature, drug terminology, and how it was packaged for distribution. SA Perry may also opine as to the general drug trafficking geographical routes and patterns."

**Doc. 48**.

The Notice also provides that SA Perry has approximately twenty years of law enforcement experience with the DEA. The Notice attaches his curriculum vitae, which asserts he has been involved in over 1,500 narcotics investigations.

The Government also submitted a notice of intent to call Officer Villegas. **Doc. 55.** Officer Villegas has twenty years of experience with the Albuquerque police department, and seven years of experience with the Pojoaque Tribal Police. Officer Villegas's testimony is focused on testifying that various indicia are not consistent with personal use but are consistent with distribution. The Notice provided as follows:

> Officer Villegas's testimony will include specialized knowledge and experience regarding narcotics investigations including operations that involved personal use amounts of narcotics. Officer Villegas will testify that the amount of methamphetamine seized in this investigation is not consistent with personal use. Officer Villegas's testimony may include his knowledge of personal use amounts methamphetamine, how a personal use amount of methamphetamine is packaged, how much a serious methamphetamine addict could consume during a twenty-four hour period, how addicts typically have drug paraphernalia in their possession, and also the physical characteristics associated with an addict, such as scars, missing teeth, and twitchiness. Officer Villegas may also opine that methamphetamine

2

addicts typically do not travel with large quantities of methamphetamine using public transportation.

See **Doc. 55**.

The notices request that the Court delay making a qualifications and reliability determination until the proposed experts testify at trial. Defendant also filed a motion for sanctions, alleging the Government filed the expert notices late pursuant to the Rule 16 standard discovery order. At a pretrial conference, the Court found any late-filed notice of intent to call expert witness to be moot because the trial was continued and directed the parties to file *Daubert* motions if necessary. Defendant filed a *Daubert* motion to exclude these two proposed experts. **Doc. 65.**

## LEGAL STANDARD

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[K]nowledge derived from previous professional experience falls squarely within the scope of Rule 702…." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 (10th Cir. 2011) (quoting *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir.2011)).

In other words, Federal Rule of Evidence 702 requires a district court to assess proffered expert testimony to ensure it is both relevant and reliable. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) (scientific knowledge); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, (1999) (technical and other specialized knowledge). First, the Court must determine

whether the expert is qualified by "knowledge, skill, experience, training or education" to render an opinion. *See* Fed. R. Evid. 702. Second, if the witness is so qualified, the Court must determine whether the expert's opinions are "reliable." *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965 (10th Cir. 2001). Finally, the Court must determine whether the proposed expert testimony would be relevant.

To assist in the assessment of reliability, the Supreme Court in *Daubert* listed four nonexclusive factors that the trial court may consider: (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community. 509 U.S. at 593-94, 113 S.Ct. 2786. This list is not exclusive, and district courts applying *Daubert* have broad discretion to consider a variety of other factors. *Kumho Tire*, 526 U.S. at 150; *see also Dodge*, 328 F.2d at 1222.

However, in *Kumho Tire*, the United States Supreme Court emphasized that the *Daubert* factors are not a "definitive checklist or test" and that a court's inquiry into reliability must be "tied to the facts of a particular case." 526 U.S. at 150. Also, according to the *Kumho Tire* decision, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id*. at 152.

## DISCUSSION

I. **Expert testimony on credibility prohibited.**

Defendant requests the Court exclude expert testimony about the credibility of the Defendant. The Court agrees that such testimony should be excluded, *United States v. Rodriguez-*

*Flores*, 907 F.3d 1309, 1321 (10th Cir. 2018), but it is unclear what specific testimony he believes violates this rule.

Moreover, SA Perry and Officer Villegas may not testify as to whether Defendant had the requisite mental state. Fed. R. Evid. 704; *United States v. Mundy*, 97 F. App'x 844, 846 (10th Cir. 2004) ("Rule 704 only prevents experts from expressly stating the final conclusion or inference as to defendant's actual mental state. The rule does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer the defendant had the requisite mental state."); *United States v. Richard,* 969 F.2d 849, 854-55 (10th Cir. 1992).

## II. <u>Proposed Expert's Qualifications and the Reliability of Expert Testimony</u>.

Defendant argues that the Government has not shown that SA Perry's and Officer Villegas' are qualified as experts, or that their testimony is reliable, because there is nothing in the expert notices detailing their experience, knowledge, or training. Defendant also appears to argue that the Court may not admit SA Perry's or Officer Villegas' expert testimony solely on the basis of their experience and training but must analyze the *Daubert* factors.

### A. <u>Law Enforcement Agents and Officers may give expert testimony on drug trafficking and narcotics investigation</u>.

Initially, the Court notes that the proposed areas of expert testimony are generally areas in which the Tenth Circuit has allowed officers and agents to testify about as expert witnesses. *United States v. Blake*, 284 F. App'x 530, 540 (10th Cir. 2008) (court has applied Rule 702 to allow law enforcement agents to provide expert testimony concerning drug trafficking); *United States v. Wilson*, 276 F. App'x 859, 861 (10th Cir. 2008), *citing United States v. Quintana,* 70 F.3d 1167, 1170-71 (10th Cir. 1995) (meaning of the drug code and terminology); *United States v. Muldrow,* 19 F.3d 1332, 1338 (10th Cir.1994) (significance of the quantity of cocaine); *United States v. Sturmoski,* 971 F.2d 452, 459 (10th Cir. 1992) (equipment of the drug trade and methamphetamine

labs); *United States v. Harris,* 903 F.2d 770, 775-76 (10th Cir.1990) (drug records); *United States v. McDonald,* 933 F.2d 1519, 1520-23 (10th Cir. 1991) (detective's testimony about the significance of certain quantities of cocaine, that people buying and selling cocaine often have single-edged razor blades in their possession, that crack cocaine is typically not sold in package).

"The Tenth Circuit has stated that the modus operandi of drug organizations, the value of drug quantities, the language of narcotics dealers, and the tools of the narcotics trade "are not subjects with which most jurors are familiar," *see United States v. McDonald,* 933 F.2d at 1522, and that, more specifically, "testimony with regard to the significance of a quantity of drugs possessed is specialized knowledge that assists the jury in understanding a fact at issue," *United States v. Mundy,* 97 Fed. Appx. at 846." *United States v. Goxcon-Chagal*, 886 F. Supp. 2d 1222, 1239 (D.N.M. 2012), *aff'd sub nom. United States v. Medina-Copete*, 757 F.3d 1092 (10th Cir. 2014). Furthermore, agents may also testify on whether a quantity of drugs and the packaging of the drugs is consistent with personal use or distribution. *United States v. Muldrow,* 19 F.3d 1332, 1338 (10th Cir.1994) (expert testimony significance of the quantity of cocaine allowed).

Therefore, the Court will allow the officers to testify as experts in these areas if their experience and training indicates that they are qualified in those areas and their expert testimony would be reliable. However, witnesses "relying solely or primarily on experience ... must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed.R.Evid. 702 advisory committee's note (2000 Amendment), *quoted in United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014). Here, there is nothing in the expert notices or the record to satisfy these requirements. The notices give no proffer on the details of their experience, such that the Court

could determine whether this expert testimony is reliable. As explained below, the Court will hold a hearing to hear evidence on the expert's experience and training.

Defendant argues that the proposed experts are not qualified to discuss drug addiction. The Court agrees that nothing in the expert notices provide that either proposed expert is qualified to discuss the complexities of drug addiction. However, the Government notes that these two proposed experts will not testify about drug addiction, and nothing in the expert notices indicate that the proposed experts would testify about addiction. Rather, Officer Villegas will testify about physical symptoms of drug use. Based on over twenty years of narcotics work, the Court has no doubt that the proposed experts can identify physical indicia of drug use.

### B. Court need not analyze Daubert factors.

Defendant appears to assert that the Court must apply the *Daubert* factors above to determine the reliability of the testimony. The Court disagrees

The Court has discretion "to determine reliability in light of the particular facts and circumstances of the particular case." *Kumho Tire,* 526 U.S. at ——, 119 S.Ct. at 1179. "The [Court has] great latitude in deciding which factors to use in evaluating the reliability of expert testimony, and in deciding whether to hold a formal hearing." *United States v. Charley,* 189 F.3d 1251, 1266 (10th Cir. 1999). Furthermore, "where… the testimony is based upon experience or training, [the Court] need not apply the *Daubert* factors to determine its reliability." *United States v. Nichols*, 169 F.3d 1255, 1265 (10th Cir. 1999); *see also United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009) ("the reliability criteria enunciated in *Daubert* are not to be applied woodenly in all circumstances… we do not believe that *Daubert* and its progeny (including the 2000 amendment to Rule 702) provide any ground for us to depart from our pre-*Daubert* precedents recognizing that police officers can acquire specialized knowledge of criminal practices

7

and thus the expertise to opine on such matters as the use of firearms in the drug trade."). For example, the Tenth Circuit found DEA Agent Small's "competence and reliability as an expert" to not be subject to criticism largely based on his experience in a job performing drug interdiction. *See United States v. Vann*, 776 F.3d 746, 758–59 (10th Cir. 2015) (noting that Agent Smalls had "worked numerous drug interdictions, observed legions of drug-smuggling methods, and caucused with criminals and professionals alike regarding the tools of the drug trade.")

Here, the proposed experts are law enforcement officers working drug interdiction. Their expert testimony is not based on any new scientific theory, and the methodologies are neither complex nor unusual. Therefore, the Court may make a reliability determination based on their testimony describing their experience and training.

C. **Court will hear testimony from SA Perry and Office Villegas on their experience and training.**

"*Daubert* does not mandate an evidentiary hearing," but "simply require[s] 'a sufficiently developed record in order to allow a determination of whether the district court properly applied the relevant law.'" *Nichols*, 169 F.3d at 1262 (quoting *United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997)). This is especially true where the expert testimony did not involve "any new scientific theory and the testing methodologies are neither new nor novel." *Id.* at 1263. In fact, those factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire*, 526 U.S. at 138.

Here, the Government appears to assert that the Court can rely on its expert notices. But the notices merely state that the proposed experts are qualified based on their experience and training, but do not give a proffer of how their experience and background satisfies the Fed. R.

Evid. 702 requirements. This is inadequate. Although routine expert testimony may be addressed without a formal *Daubert* hearing, there is little to no evidence in the record at this point. The Government also suggests that the Court should address reliability after hearing testimony at trial. Generally, however, the Court should address whether the proposed expert testimony is both reliable and relevant before permitting a jury to hear the testimony. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

Defendant suggests that because the Government requests that the Court rule based on the notices alone and not hold a hearing, the Court should rule that the Government failed to carry its burden. But the nature of the proposed expert testimony likely requires a proffer or testimony at a hearing. The Court, in its discretion, chooses to hold a hearing.

Therefore, the Court will wait to hear evidence on SA Perry's and Officer Villegas' experience and training, at a hearing to be held prior to trial, before determining whether they are qualified and whether their expert testimony is reliable.

## III.     <u>Relevance</u>.

Defendant alleges that much of the proposed expert testimony on areas such as drug interdiction operations, the street value of methamphetamine, methamphetamine's origins, properties and nature, and drug terminology, is irrelevant.

Expert testimony must assist the trier of fact to understand the evidence or to determine a fact at issue to be admissible. Fed. R. Evid. 702. In other words, "[r]elevant expert testimony must logically advance a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Garcia*, 635 F.3d 472, 476–77 (10th Cir. 2011) (internal quotation marks and citations omitted). "In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the

testimony is within the juror's common knowledge and experience, and "whether it will usurp the juror's role of evaluating a witness's credibility. *Id.* (internal citations and quotation marks omitted). Pursuant to Rule 702, courts must conduct a "common-sense inquiry" into whether a juror would be able to understand certain evidence without specialized knowledge. *Id, citing United States v. Becker,* 230 F.3d 1224, 1231 (10th Cir. 2000). "Because the average juror is often innocent of the ways of the criminal underworld, expert testimony is allowed in order to provide jurors a context for the actions of defendants." *Id.*

Here, the Court agrees with the Government that the proposed expert testimony as specified in the expert notices is relevant. *See* **Doc. 75.** Specifically, the majority of the proposed expert testimony goes to assisting the jury in understanding an element of the charges, such as whether Defendant intended to distribute methamphetamine. As cited above, this is permissible under Tenth Circuit law. Moreover, evidence of street value of the drugs seized is relevant to whether the drugs were likely for personal use or distribution, and the Defendant's knowledge of the drug. *United States v. DuFriend*, 691 F.2d 948, 952 (10th Cir. 1982) ("Evidence of quantity of a controlled substance generally is relevant to intent to distribute."); *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999) (reversing trial court for excluding evidence of drug's street value). Finally, the rest of the proposed expert testimony assists the trier of fact in understanding the evidence and aspects of drug trafficking and drug investigations that would likely be unfamiliar to them.

## IV.     Unfair prejudice under Fed. R. Evid. 403.

Similarly, Defendant argues that the allegedly irrelevant expert testimony will result in unfair prejudice.

Relevant evidence is generally admissible. Fed. R. Evid. 402. However, Fed. R. Evid. 403 allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Evidence is unfairly prejudicial if "it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment" as to liability. *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999) (quoting *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996)). "[T]he unfair prejudice aspect of Rule 403 cannot be equated with testimony which is simply unfavorable to a party." *Rodriguez*, 192 F.3d at 951 (quoting United States v. Flanagan, 34 F.3d 949, 953 (10th Cir. 1994)).

Here, the Court finds that the probative value of the proposed expert testimony is not outweighed by unfair prejudice. It appears that any expert testimony is related to assisting the jury in determining whether Defendant intended to distribute the drugs he allegedly possessed. To the extent the experts wander into discussion of the deleterious effects of methamphetamine on the community, the Court will consider any objections.

Specifically, Defendant argues that any testimony about his drug use - or lack of drug use – would be unfairly prejudicial and "inflame the passions of the jury." It appears that Officer Villegas will testify that they found no indicia of personal drug use. The Court finds that testimony about the *lack* of drug use is not unfairly prejudicial.

## CONCLUSION

For these reasons, these motions **(Doc. 39, 65, 69)** are **DENIED IN PART**. However, the Court will hear testimony at the pretrial conference, to be set by the Court's Courtroom Deputy, to hear testimony from SA Perry and Officer Villegas on their experience and training. Thereafter,

the Court will determine whether (1) they are qualified, and (2) whether their expert testimony is reliable.

The Court reiterates that the proposed expert testimony is not unusual or complex. The undersigned has heard SA Perry testify numerous times over the past seventeen years on the federal bench. This matter could have been resolved based on a written proffer without a hearing. However, because there is little in the record on which to base a Fed. R. Evid. 702 decision, the Court will hear the testimony at the pretrial conference.

Furthermore, the Government shall make SA Perry and Officer Villegas available to testify at the pretrial conference, so that Defendant may have the opportunity to cross-examine them.

**IT IS SO ORDERED**

_____
CHIEF UNITED STATES DISTRICT JUDGE